UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VENTURA CONTENT, AVV, | Civil Action No. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| v. | |
| MANSEF INC d/b/a MANSEF PRODUCTIONS, INC. and 6721851 CANADA INC d/b/a INTERHUB, INC. | |
| Defendants. | |



Ventura Content, AVV ("Ventura"), by and for its Complaint against defendants Mansef,

Inc. d/b/a Mansef Productions, Inc. ("Mansef") and 6721851 Canada Inc. d/b/a Interhub, Inc.

("Interhub") avers as follows:

## INTRODUCTION

1.　　Advancements in digital technology have revolutionized how consumers inform

and entertain themselves. Movies, television shows, sound recordings, and other types of

copyrighted content are now distributed and performed over the Internet. Numerous businesses

have capitalized on this technological wave by offering networks, distribution platforms and

tools that provide access to online forms of entertainment. Some businesses do so in a manner

that respects the intellectual property rights of copyright owners. Other entities, such as

defendants, seek to take advantage of the potential of digital technology by offering services

intentionally built on the exploitation of copyrighted works.

2.　　Online copyright piracy has had a devastating impact on the adult entertainment

industry. Legitimate companies such as Ventura devote substantial resources to develop and

produce high quality, professionally-made adult videos and distribute them to consumers in

conformity with the record keeping and labeling requirements imposed under Federal Law. Using the leverage of the Internet, defendants and others like them appropriate the value of this adult video content on a massive scale for their own benefit by operating websites known as "Tube Sites" that allow users to upload, view, and download a vast library of infringing adult video content for free. Like other notorious infringing services before them such as Napster, Grokster, and Kazaa, the emergence of these Tube Sites operated by defendants and others threatens not just Ventura, but the entire adult entertainment industry. *See, e.g.*, C. Brian Smith, *Porn Panic!*, Advocate.com, Apr. 6, 2009 (available at http://www.advocate.com/News/News_Features/Porn_Panic/) (reporting that "many [websites] tacitly permit users to upload copyrighted content" and "many producers are resigned to the reality" that copyright infringement is inevitable on tube sites).

3.      Defendants operate the "pornhub network" which consists of at least four related commercial websites accessible at the domain names www.keezmovies.com, www.pornhub.com, www.extremetube.com, and www.tube8.com (hereinafter referred to as "Tube Sites"). These Tube Sites maintain the fiction that they offer a forum for consumers to upload and share their own original "user-generated" adult video content; however, in reality, they function as repositories for an extensive collection of infringing adult videos, including works belonging to Ventura.

4.      Defendants are well aware that the video content available on the Tube Sites includes infringing copyrighted material. Indeed, the cornerstone of the Tube Sites' business plan is their ability to offer their users access to free copyrighted adult video as a means to attract users to their sites. Defendants deliberately built up an extensive collection of infringing works to draw traffic to their websites, enabling the sites to gain market share in the digital adult entertainment market and increase their enterprise values. The Tube Sites draw a tremendous amount of traffic, with at least one of defendants' Tube Sites ranked among the top 35 websites

in the United States. In addition, defendants collect advertising revenue from the traffic generated by the draw of this infringing material, and they further use this material to entice their users to upgrade to "premium" (*i.e.*, paid) memberships on the Tube Sites and their related websites. Defendants thus have amassed profits and market share by appropriating the value of content they do not own on a massive scale without payment to, or any permission from, the copyright owners.

5.     Defendants actively engage in, promote, and induce this infringement. Defendants host copies of the infringing videos on their own servers, they create their own copies of the videos in the desired format, they categorize them to facilitate user searches, and they publicly perform, reproduce, and distribute the infringing videos on their Tube Sites. Thus, defendants do not simply enable massive infringement by their users, they knowingly distribute, reproduce, display, and publicly perform the copyrighted works uploaded to the sites.

6.     Defendants also promote and enable infringement by users of the Tube Sites. For example, defendants' www.keezmovies.com website openly touts that: "We update our porno daily and have a huge selection of porn tube categories to choose from, so you can stream free porn movies of the hottest porn stars today." Similarly, defendants' www.pornhub.com website proclaims that "[t]he PornHub team is always updating and adding more porn videos every day. It's all here and 100% free porn." Defendants' www.extremetube.com website states that "Fresh new porn videos are updated daily! Extreme tube is the one-stop shop for free hardcore sex porn tube videos." Defendants' Tube Sites even have express categories of videos dedicated to well known "pornstars," *i.e.*, professional actors who appear in studio-produced, copyrighted videos. Several of Defendants' Tube Sites explicitly encourage the uploading of "professional" videos.

7.     Ventura's copyrighted works available on the Tube Sites have been viewed tens of millions of times by users of defendants' Tube Sites. The infringing content identified by Ventura may be only a small fraction of the content on the Tube Sites that infringes Ventura's

copyrights, because defendants place the burden entirely on copyright owners to monitor their websites to detect infringing videos and send notices demanding that they "take down" the specific infringing video files.

8.    Defendants' willful infringement and other illegal conduct have harmed and continue to harm the interests of legitimate copyright owners, including Ventura.  Absent relief from the Court, defendants' rampant infringement will continue to undermine the ability of content creators such as Ventura to conduct business.  Ventura seeks a declaration that defendants' conduct willfully infringes Ventura's copyrights, an injunction requiring defendants' Tube Sites to prevent or limit infringement of Ventura's copyrights, and damages in an amount to be determined at trial.

## THE PARTIES

**Ventura**

9.    Ventura Content, AVV is an Aruban corporation.  Ventura owns and distributes adult-oriented content.  Ventura Content, AVV owns each of the copyrights at issue in this litigation.

10.    Ventura is one of the leading distributors of high quality adult video.  Ventura has invested and continues to invest hundreds of thousands of dollars annually to cultivate and distribute its videos because the Copyright Act protects its economic incentive to do so.  Ventura distributes and publicly displays and performs these works (within the meaning of the Copyright Act), and/or licenses them for distribution and/or public performance: (a) through its own websites (such as www.pinkvisual.com and www.ipinkvisual.com) and a small number of other authorized Internet distribution channels; (b) over cell phones and other mobile devices; (c) on DVD and other video formats; and (d) by telecast on pay-per-view television systems.

11.    Ventura's trademarks include the "Pink Visual" brand of adult entertainment, and its websites generate advertising and subscription revenue, as well as other benefits, from the

Internet traffic advanced by the availability of Pink Visual-branded video content.

12.     Ventura holds valid Certificates of Copyright Registration from the Register of Copyrights for a number of its adult videos including but not limited to those listed on Exhibits A attached to this Complaint.

**Defendants**

13.     Defendant Mansef Inc. ("Mansef") is a corporation organized and existing under the laws of the Province of Quebec, Canada. Mansef also does business in the United States under the name Mansef Productions, Inc.

14.     Defendant 6721851 Canada Inc. ("Interhub") is a corporation organized and existing under the laws of the Province of Quebec, Canada. This company also does business in the United States under the name Interhub, Inc.

15.     Mansef and Interhub are owned and operated by an overlapping and related set of shareholders and officers. Mansef is owned by three corporations organized under the laws of the province of Quebec (6890709 Canada Inc., 6889336 Canada Inc., and 6890750 Canada Inc.) which are each owned by one of Mansef's corporate officers. In particular, 6890709 Canada Inc. is owned by Salam Said, a Vice President of Mansef; 6889336 Canada Inc. is owned by Ouissam Youssef, the President of Mansef; and 6890750 Canada Inc. is owned by Stephane Manos, a Vice President of Mansef.

16.     Interhub is also owned by three corporations (6890750 Canada Inc., 6889336 Canada Inc., and 6889379 Canada Inc.) which are, in turn, owned by officers of both Mansef and Interhub. Two of the companies (6890750 Canada Inc. and 6889336 Canada Inc.) are owned by Stephane Manos and Ouissam Youssef, who are also officers of Interhub. The third shareholder in Interhub (6889379 Canada Inc.) is owned by Matthew Keezer, who acts as an officer of both Interhub and Mansef.

17.     Defendant Interhub operates a website accessible through the www.pornhub.com

domain name ("PornHub"), which allows users to access a vast library of copyrighted content, including Ventura's content, via streaming video. PornHub claims that its websites serve over eleven million users daily. In terms of the number of visitors, PornHub consistently ranks among the top 50 websites in the world and among the top 35 websites in the United States.

18.     Defendant Interhub operates a Tube Site, located at www.keezmovies.com ("Keez"), which allows users to access streaming video content, including Ventura's content. Over the last six months, Keez has grown rapidly in popularity and is now one of the 200 most popular websites in the world in terms of the number of visitors.

19.     Defendant Mansef operates a Tube Site, located at www.tube8.com ("Tube8"), which allows users to access streaming video content, including Ventura's content. Tube8 ranks among the top 80 websites in the world and in the United States in terms of the number of visitors.

20.     Defendant Interhub operates a Tube Site, located at www.extremetube.com ("Extremetube"), which allows users to access streaming video content, including Ventura's content. Extremetube appears to have begun operating less than a year ago, and is already ranked among the top 1000 websites in the United States and the world.

21.     On information and belief, defendants operate the Tube Sites as part of a related network of sites described as the "pornhub network." Each of defendants Tube Sites allows users to link to the other Tube Sites from the home page and displays thumbnails for videos available on those sites under the category heading "our friends."

## JURISDICTION AND VENUE

22.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

23.     This Court has original subject matter jurisdiction over the copyright infringement claims pursuant to 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a).

24.     This Court has personal jurisdiction over defendants. Upon information and belief, defendants do continuous and systematic business in New York and hence are present in New York. See N.Y. C.P.L.R. § 301. Furthermore, defendants transact business in New York and contract to supply goods and services in the state in connection with the matters giving rise to this suit. *See id.* § 302(a)(1). The computer servers that host the PornHub, Keez, and Extremetube Tube Sites and provide infringing content to users are physically located in New York. *See id.* § 302(a)(4). These New York based servers are responsible for distributing infringing copies of Ventura's copyrighted content to users all over the world including in New York. Furthermore, upon information and belief, defendants enable New York residents to use services that defendants own and operate to: (a) access digital files containing Ventura's copyrighted content; and (b) view and download infringing copies of Ventura's works. The voluminous acts of direct infringement, for which defendants are liable, require intensive interaction between the users' computers and defendants' websites. Defendants are responsible for the acts of infringement that, upon information and belief, have occurred in New York, where New York residents have accessed defendants' websites to view and download infringing copies of Ventura's works. In addition, upon information and belief, defendants have engaged in paid transactions with New York residents for the provision or sale of goods and services, including infringing materials. Defendants expect or reasonably should expect their infringing and other illegal conduct to have consequences in New York, and they derive substantial revenue from interstate commerce. *See* N.Y. C.P.L.R. § 302(a)(1); *id.* § 302(a)(3).

25.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(a).

## NATURE OF THE ACTION

26.     Under Section 106 of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"), Ventura has the distinct, severable, and exclusive rights to, *inter alia,*

reproduce, distribute, publicly perform, and publicly display its copyrighted works, as well as the exclusive right to authorize any of these activities. 17 U.S.C. §§ 106(1), (4), (5). Defendants have appropriated and exploited Ventura's copyrighted works, resulting in the rampant infringement evident on the Tube Sites.

27.    The Tube Sites provide access to their respective libraries of online adult videos, which Internet users may view free of charge. A user who wants to view a video on any of the Tube Sites would generally proceed with three steps. During the entire experience, the infringing Tube Site prominently displays its logo, user interface, and advertising to the user.

28.    *First*, the user goes to a site operated by defendants by typing in one of the following addresses into the user's web browser: www.keezmovies.com, www.pornhub.com, www.tube8.com, or www.extremetube.com.

29.    *Second*, the user may enter search terms into the site's search and indexing function, and receive an array of thumbnail images of videos in the site matching those terms. On information and belief, the site creates the thumbnails, which are individual frames from videos in its library (including infringing videos) for the purpose of helping users find what they are searching for. Alternatively, rather than entering any search terms, the user may elect to view a video from a selection of thumbnails prepared and presented by the website on its home page and within certain predefined categories. For example, PornHub displays thumbnails of "videos being watched" and "most recent videos" on its home page.

30.    *Third*, regardless of how a thumbnail of a video becomes presented to the user — *e.g.*, on a Tube Site's home page, as a result of the user's search terms, or within a certain category — the user views the content by clicking on the thumbnail. Defendants then publicly perform the chosen video by sending streaming video content from their servers to the user's computer. On information and belief, defendants themselves create the copy of the infringing video files that are hosted on their servers and transmit multiple copies of those same video files

to multiple different users. On information and belief, the public performance of the video also results in a copy of the video being made and distributed to the user's computer.

31.     Although the websites operated and controlled by defendants allow for users to upload videos to the Tube Sites, defendants freely acknowledge their involvement in obtaining and presenting the content available on their websites. For example, Keez boasts that its operators "update our porno daily and have a huge selection of porn tube categories to choose from, so you can stream free porn movies[.]" PornHub advertises to users about the same conduct: "The PornHub team is always updating and adding more porn videos every day. It's all here and 100% free porn." Tube8 brags that it "adds many porn videos every day."

32.     Defendants are fully aware that the Tube Sites distribute, display and perform unauthorized content that is subject to copyright protection. For example, the Keez site features a "pornstar database" that lists the professional name of the actors starring in the video and a corresponding selection of videos featuring the particular actor. Defendants actively promote the availability of this content in order to attract infringement-minded users to their websites. ("Search for your favorite actresses, browse our huge catalogue or take a look at who we like with this month's Featured Pornstars!"). The PornHub site maintains a similar category of videos. Similarly, when allowing users to upload videos, both the Keez site and the Extremetube site require users to check a box to note whether the video is "professional" or "homemade." Upon information and belief, a substantial portion of the videos available on these sites are "professional" videos comprising copyrighted content.

33.     All uploaded videos become part of the Tube Sites' respective libraries for performance and display on the websites, which defendants control and directly profit from. Regardless of who uploads a specific video, defendants copy the video in their own software format, add it to their own servers, make it available for viewing on their websites and provide the means for users to search for and locate the content of their choice. Thus, defendants'

wrongdoing is not limited to simply providing storage space, conduits, or other facilities to users who create their own websites with infringing materials. To the contrary, defendants commit the infringing public performance, public display, and distribution of Ventura's copyrighted works, and that infringement occurs on the websites operated and controlled by defendants.

34.    Defendants and the users of their websites have not received license, authorization, permission, or consent to use the registered copyrighted works owned by Ventura that have appeared on the Tube Sites (including, but not limited to, the content listed on Exhibit A). Instead, in violation of Ventura's rights under copyright law, defendants have willfully, intentionally, and purposefully reproduced, publicly performed, and publicly displayed the copyrighted works, and knowingly facilitated, enabled, induced, and materially contributed to infringing uses thereof, and refused to exercise their ability to control or supervise infringing uses thereof from which they obtain direct financial benefits.

35.    Defendants have actual knowledge and clear notice of this massive infringement, which is obvious to even the most casual visitor to the Tube Sites. The rampant infringement of Ventura's copyrights on Tube Sites is open and notorious, and has been the subject of industry reports. *See, e.g.*, Oliver J. Chiang, *The Challenge of User-Generated Porn*, Forbes.com, August 5, 2009, at http://www.forbes.com/2009/08/04/digital-playground-video-technology-e-gang-09-ali-joone.html. Defendants' sites are also filled with "Red flags" from which infringing activity is apparent, such as the presence of numerous full length or extended videos often featuring well known adult industry "pornstars" who appear in studio-produced and copyrighted films. Indeed, the infringing copyrighted material on the websites is a critical part of defendants' business plans to increase each Tube Site's traffic, market share, revenue, profits, and enterprise value.

36.    Defendants profit from the infringement of Ventura's copyrighted works, and receive financial benefits directly attributable to their infringing activities. The Tube Sites have built an infringement-driven business by exploiting the popularity of copyrighted works

produced by adult entertainment companies, including Ventura, to draw millions of users to their websites. Defendants derive advertising revenue directly attributable to the infringing works, because (i) advertisers pay defendants to display banner advertising to users whenever they access the Tube Sites and search for (or view) infringing videos and (ii) defendants seek to sell paid subscriptions to users who are drawn to their websites by the allure of free content. There is a direct causal connection between the presence of infringing videos and the Tube Sites' income. Thus, the draw of infringing works — encompassing the infringement of Ventura's works — contributes substantially and directly to the values of the Tube Sites. Furthermore, the Tube Sites also act as conduits to direct website traffic to other profit-making businesses owned by defendants. In addition to generating revenue through advertising sources, the Tube Sites also generate revenue through these related businesses.

37.     Defendants have the right and ability to control the massive infringement on their sites. With respect to content uploaded by users, the infringement is being committed on the defendants' own websites — not on websites controlled by other entities. Defendants explicitly recognize their control over infringing content. For example, Keez's Terms & Conditions expressly state that "keezmovies may at its sole discretion have the right to refuse to publish, remove, or block access to any User Submission that is available via the Website or other keezmovies network or service at any time, for any reason, or for no reason at all, with or without notice. . . . keezmovies may review and delete any User Submissions that, in its judgment, violates this Agreement[.]" Furthermore, upon information and belief, defendants review content uploaded by users before it becomes publicly available and reject some videos and accept others based on criteria of their own selection.

38.     Defendants have failed to employ reasonable measures that could substantially reduce or eliminate the massive amount of copyright infringement on their websites. Even though they are well aware of — and admit they have the right and ability to control — the

rampant infringement on their websites, defendants' intentional strategy has been to take no steps to curtail the infringement from which they profit unless notified of specific infringing videos by copyright owners, shifting the entire burden (and high cost) of monitoring the Tube Sites onto the victims of infringement.

39.     Defendants adopted this hands-off policy knowing that copyright owners have limited ability to monitor for infringing videos on the sites and send takedown notices for the videos they find.  Copyright owners can monitor for infringing videos only after they are posted on the site, so there is an inevitable time lag between when a video is posted and the first reasonable time at which an owner can identify it and send a takedown notice.

40.     Defendants' strategy and conduct leave Ventura unable to meaningfully protect its rights.  Defendants deprive Ventura of economic returns to which it is entitled under the copyright laws, thereby undermining the system of incentives that copyright provides for the creation and distribution of creative works.

## CLAIMS FOR RELIEF

## COUNT I

### (Direct Copyright Infringement – Public Performance)

41.     Ventura incorporates by reference paragraphs 1 - 40 as if set forth herein.

42.     Without authorization, defendants are publicly performing and have publicly performed or have authorized the public performance of, by means of digital video transmission, Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(6) and 501, including but not limited to the copyrighted video content listed in Exhibit A hereto.

43.     The infringement of Ventura's rights in the public performance of each of their copyrighted video works constitutes a separate and distinct act of infringement.

44.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Ventura's rights.

45.    As a direct and proximate result of defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including defendants' profits from infringement, as will be proven at trial.

46.    Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

47.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in money damages. Ventura has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

## COUNT II

### (Direct Copyright Infringement – Public Display)

48.    Ventura incorporates by reference paragraphs 1 - 47 as if set forth herein.

49.    Without authorization, defendants are publicly displaying and have publicly displayed or have authorized the public display, by means of digital transmission, digital images taken from Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(5) and 501.

50.    The infringement of Ventura's rights in the public display of its copyrighted digital images constitutes a separate and distinct act of infringement. Each time defendants display an unauthorized copy of an image taken from Ventura's copyrighted video content, defendants publicly display Ventura's works in violation of Ventura's exclusive right under 17 U.S.C. § 106(5).

51.    Defendants' acts of infringement are willful, intentional and purposeful, in

disregard of and indifference to Ventura's rights.

52.     As a direct and proximate result of defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including defendants' profits from infringement, as will be proven at trial.

53.     Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

54.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in money damages. Ventura has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

## COUNT III

### (Infringement of Ventura's Distribution Rights)

55.     Ventura incorporates by reference paragraphs 1 - 54 as if set forth herein.

56.     Without authorization, defendants are distributing and have distributed or have authorized the distribution to the public copies of Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(3) and 501, including but not limited to the copyrighted video content listed in Exhibit A hereto.

57.     The infringement of Ventura's rights to distribute its copyrighted video content constitutes a separate and distinct act of infringement. Each time defendants transfer an unauthorized copy of one of Ventura's copyrighted video works from defendants' servers to another computer, cell phone, or other device, defendants distribute that copy in violation of

Ventura's exclusive rights under 17 U.S.C. §§ 106(3).

58.    Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and indifference to Ventura's rights.

59.    As a direct and proximate result of defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including defendants' profits from infringement, as will be proven at trial.

60.    Ventura is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

61.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated or measured in money damages. Ventura has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting infringement of Ventura's copyrights and exclusive rights under copyright.

## COUNT IV

### (Inducement of Copyright Infringement)

62.    Ventura incorporates by reference paragraphs 1 - 61 as if set forth herein.

63.    Users of defendants' websites have infringed and are infringing Ventura's rights in their registered copyrighted works by *inter alia* uploading and downloading infringing copies of Ventura's copyrighted works on defendants' Tube Sites, and publicly performing or displaying or purporting to authorize the public performance or display of such infringing videos. Defendants' Tube Site users are therefore directly infringing Ventura's exclusive rights of reproduction, distribution, public performance, and public display under 17 U.S.C. § 106.

64.     Defendants are liable under the Copyright Act for inducing the infringing acts of defendants' users.  Defendants operate and maintain their sites with the object of promoting their use to infringe Ventura's copyrighted works.  Defendants' inducement of copyright infringement is apparent from, among other things, the predominantly infringing content available on their sites; defendants' open listing, categorization, and advertising of obviously infringing works; defendants' express invitations to view and download the most sought-after video content for free; defendants' failure to make any earnest effort to prevent or filter copyright infringement on their sites; and defendants' business model for the Tube Sites, which is overwhelmingly dependent upon widespread copyright infringement.  Defendants unlawfully induce the direct infringement of Ventura's copyrighted works, including those listed on Exhibits A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.  17 U.S.C. § 106.

65.     The foregoing acts of infringement by defendants have been willful, intentional, and purposeful, in disregard of and indifferent to Ventura's rights.

66.     As a direct and proximate result of defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).  Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including defendants' profits from infringement, as will be proven at trial.

67.     Ventura further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

68.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in money.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is

entitled to an injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

**COUNT V**

**(Contributory Copyright Infringement)**

69.    Ventura incorporates by reference paragraphs 1 - 68 as if set forth herein.

70.    Users of defendants' websites have infringed and are infringing Ventura's rights in its registered copyrighted works by *inter alia* uploading and downloading infringing copies of Ventura's copyrighted works on defendants' Tube Sites, and publicly performing or displaying or purporting to authorize the public performance or display of such infringing videos. Defendants' Tube Site users are therefore directly infringing Ventura's exclusive rights of reproduction, distribution, public performance, and public display under 17 U.S.C. §§ 106.

71.    Defendants are liable as contributory copyright infringers. Defendants have actual and constructive knowledge of the infringing activity that occurs on and through their sites. Through the creation, maintenance, and operation of the sites and facilities for this infringement, defendants knowingly cause and/or otherwise materially contribute to the unlawful reproduction, distribution, and public performance and display of Ventura's copyrighted works, including those listed on Exhibit A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

72.    The foregoing acts of infringement by defendants have been willful, intentional and purposeful, in disregard of and indifferent to Ventura's rights.

73.    As a direct and proximate result of defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual

damages, including defendants' profits from infringement, as will be proven at trial.

74.    Ventura further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

75.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in money.  Ventura has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Ventura is entitled to an injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

**COUNT VI**

**(Vicarious Copyright Infringement)**

76.    Ventura incorporates by reference paragraphs 1 - 75 as if set forth herein.

77.    Users of defendants' websites have infringed and are infringing Ventura's rights in their registered copyrighted works by *inter alia* uploading and downloading infringing copies of Ventura's copyrighted works on defendants' Tube Sites, and publicly performing or displaying or purporting to authorize the public performance or display of such infringing videos. Defendants' Tube Site users are therefore directly infringing Ventura's exclusive rights of reproduction, distribution, public performance, and public display under 17 U.S.C. §§ 106.

78.    Defendants are vicariously liable for such infringing acts.  Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their websites, and at all relevant times have derived a direct financial benefit attributable to the infringement through those sites.  Defendants are therefore vicariously liable for the unlawful reproduction, distribution, and public performance and display of Ventura's copyrighted works, including those listed on Exhibits A hereto, in violation of Ventura's exclusive rights under the copyright laws of the United States.

79.    The foregoing acts of infringement by defendants have been willful, intentional

and purposeful, in disregard of and indifferent to Ventura's rights.

80.    As a direct and proximate result of defendants' infringement of Ventura's copyrights and exclusive rights under copyright, Ventura is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c). Alternatively, at Ventura's election, pursuant to 17 U.S.C. § 504(b), Ventura shall be entitled to its actual damages, including defendants' profits from infringement, as will be proven at trial.

81.    Ventura further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

82.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Ventura great and irreparable injury that cannot fully be compensated for or measured in money. Ventura has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Ventura is entitled to a preliminary and permanent injunction prohibiting further infringements of its copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

WHEREFORE, Ventura prays for judgment against defendants as follows:

1.    For a declaration that the websites owned, operated, and/or controlled by defendants willfully infringe Ventura's copyrights both directly and secondarily.

2.    For injunctive relief requiring that defendants and their agents, employees, officers, successors, licensees, and all persons acting in concert or participation with each or any of them, cease: (a) directly or indirectly infringing, or causing, enabling, facilitating, materially contributing to, encouraging, and inducing or participating in the infringement of any of Ventura's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created; and (b) uploading, downloading, reproducing, distributing, displaying, or performing Ventura's copyrighted works, whether through the Tube Sites or by

any other means.

    3.    For statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at Ventura's

election, pursuant to 17 U.S.C. § 504(b), for actual damages plus defendants' profits from

infringement, as will be proven at trial.

    4.    For Ventura's costs, including reasonable attorneys' fees, pursuant to

17 U.S.C. § 505.

    5.    For pre- and post-judgment interest according to law.

    6.    For such other and further relief as the Court may deem just and proper.

Dated:  February 11, 2010        Respectfully submitted,

By: _____

Gianni P. Servodidio (GS-0713)
Joseph J. McFadden (JM-3232)
JENNER & BLOCK LLP
919 Third Avenue; 37th Floor
New York, NY 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

Christopher C. Chiou (*subject to admission pro hac vice*)
JENNER & BLOCK LLP
633 West 5th Street, 35th Floor
Los Angeles, CA 90071
Telephone:  (213) 239-5100
Facsimile:  (213) 239-5199

*Attorneys for Ventura Content, AVV*

# EXHIBIT A

## Exhibit A  -  List of Infringing Works

|    | Copyright Owner | Copyright Registration |
|----|-----------------|------------------------|
| 1  | Ventura Content AVV | PA0001327287 |
| 2  | Ventura Content AVV | PA0001329950 |
| 3  | Ventura Content AVV | PA0001332158 |
| 4  | Ventura Content AVV | PA0001332159 |
| 5  | Ventura Content AVV | PA0001332160 |
| 6  | Ventura Content AVV | PA0001335837 |
| 7  | Ventura Content AVV | PA0001335844 |
| 8  | Ventura Content AVV | PA0001335850 |
| 9  | Ventura Content AVV | PA0001339092 |
| 10 | Ventura Content AVV | PA0001339094 |
| 11 | Ventura Content AVV | PA0001340319 |
| 12 | Ventura Content AVV | PA0001340320 |
| 13 | Ventura Content AVV | PA0001340322 |
| 14 | Ventura Content AVV | PA0001340324 |
| 15 | Ventura Content AVV | PA0001365191 |
| 16 | Ventura Content AVV | PA0001365195 |
| 17 | Ventura Content AVV | PA0001365206 |
| 18 | Ventura Content AVV | PA0001365208 |
| 19 | Ventura Content AVV | PA0001365214 |
| 20 | Ventura Content AVV | PA0001370622 |
| 21 | Ventura Content AVV | PA0001370634 |
| 22 | Ventura Content AVV | PA0001370639 |
| 23 | Ventura Content AVV | PA0001370641 |
| 24 | Ventura Content AVV | PA0001377156 |
| 25 | Ventura Content AVV | PA0001382758 |
| 26 | Ventura Content AVV | PA0001382764 |
| 27 | Ventura Content AVV | PA0001382767 |

| 28 | Ventura Content AVV | PA0001383716 |
| 29 | Ventura Content AVV | PA0001383722 |
| 30 | Ventura Content AVV | PA0001383727 |
| 31 | Ventura Content AVV | PA0001383736 |
| 32 | Ventura Content AVV | PA0001383737 |
| 33 | Ventura Content AVV | PA0001383741 |
| 34 | Ventura Content AVV | PA0001383745 |
| 35 | Ventura Content AVV | PA0001383754 |
| 36 | Ventura Content AVV | PA0001383757 |
| 37 | Ventura Content AVV | PA0001383966 |
| 38 | Ventura Content AVV | PA0001385321 |
| 39 | Ventura Content AVV | PA0001388995 |
| 40 | Ventura Content AVV | PA0001600032 |
| 41 | Ventura Content AVV | PA0001614615 |
| 42 | Ventura Content AVV | PA0001646230 |
| 43 | Ventura Content AVV | PA0001646233 |
| 44 | Ventura Content AVV | PA0001646253 |
| 45 | Ventura Content AVV | PA0001649207 |