UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VENTURA CONTENT, AVV,<br>Plaintiff<br>v.<br>MANSEF, INC. d/b/a MANSEF PRODUCTIONS, INC. and 6721851 CANADA INC. d/b/a INTERHUB, INC.<br>Defendants | Civil Action No. 10 CV 1149 (SAS)(AJP) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

Michael J. Lane, Esq.
Kanishka Agarwala, Esq.
Dennis J. Nolan, Esq.

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

Attorneys for Defendants
Mansef, Inc. d/b/a Mansef Productions, Inc.
and 6721851 Canada Inc. d/b/a Interhub, Inc.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

RELEVANT FACTS ..... 3

A. The Parties ..... 3

B. Defendants' Business and Hosting of Content ..... 4

C. Defendants' "Take Down" Procedures ..... 5

D. Plaintiff's Alleged Ownership Of Copyrights ..... 5

ARGUMENT ..... 6

I. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS ..... 6

A. Defendants Are Not "Present" in New York To Allow This Court to Exercise Its Jurisdiction Over Defendants Under CPLR § 301 ..... 8

B. Defendants Do Not "Transact Business" in New York To Subject Them To Jurisdiction Under CPLR § 302(a)(1) ..... 10

(i) Defendants Do Not "Transact Business" in New York ..... 10

(ii) This Action Does Not Arise Out Of Defendants' In-State Conduct ..... 16

C. Defendants Are Not Subject to Jurisdiction Under CPLR § 302(a)(3)(ii) Because They Did Not Injure Plaintiff's Property In New York and Any Injury To Plaintiff in New York Was Not "Reasonably Foreseeable." ..... 17

II. ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF FORUM NON CONVENIENS ..... 20

III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT ADEQUATELY PLEADED THE ALLEGED COPYRIGHT INFRINGEMENT UNDER FED. R. CIV. P. 8(A) ..... 23

IV. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO COMPLY WITH 17 U.S.C. § 411 ..... 25

A. Copyright registrations at Serial Nos. 1 through 23 ..... 25

B. Copyright registrations at Serial Nos. 24 through 45 ..... 27

**TABLE OF CONTENTS (cont'd)**

**Page**

V. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER FED. R. CIV. P. 12(B)(6) ............ 28

CONCLUSION ............ 30

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

A.I. Trade Fin., Inc. v. Petra Bank,
989 F.2d 76 (2d Cir. 1993) ........ 9

ATSI Commc'ns. Inc. v. Shaar Fund, Ltd.,
493 F.3d 87 (2d Cir. 2007) ........ 28

Alexander v. Irving Trust Co.,
132 F. Supp. 364 (S.D.N.Y. 1955) ........ 26

Amberson Holdings LLC v. Westside Story Newspaper,
110 F. Supp. 2d 332 (D.N.J. 2000) ........ 15

In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine,
311 F.3d 488 (2d Cir. 2002) ........ 22

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ........ 28

Bensusan Rest. Corp. v. King,
126 F.3d 25 (2d Cir. 1997) ........ 10

Best Van Lines, Inc. v. Walker,
490 F.3d 239 (2d Cir. 2007) ........ 11, 16

Big East Entm't, Inc. v. Zomba Enter., Inc,
453 F. Supp. 2d 788 (S.D.N.Y. 2006) ........ 26, 28

Briley v. Blackford,
No. 89 Civ. 8365 (PNL),1990 WL 124341 (S.D.N.Y. Aug. 21, 1990) ........ 19

Byrne v. British Broad. Corp.,
132 F. Supp. 2d 229 (S.D.N.Y. 2001) ........ 28

Capitol Records, LLC v. VideoEgg, Inc.,
611 F. Supp. 2d 349 (S.D.N.Y. 2009) ........ 18

Cartoon Network LP v. CSC Holdings, Inc.,
536 F.3d 121 (2d Cir. 2008) ........ 29

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

Chang v. Virgin Mobile USA, LLC,
No. 3:07-CV-1767-D, 2009 WL 111570 (N.D. Tex. Jan. 16, 2009) ..... 15

Citigroup, Inc. v. City Holding Co.,
97 F. Supp. 2d 549 (S.D.N.Y. 2000) ..... 11, 15, 16

Creative Tech. Ltd. v. Aztech Sys. Pte., Ltd.,
61 F.3d 696 (9th Cir. 1995) ..... 21

CutCo Indus., Inc. v. Naughton,
806 F.2d 361 (2d Cir. 1986) ..... 10

DeJesus v. Rafael,
No. 00-5137 (SWK), 2003 WL 21305358 (S.D.N.Y. June 5, 2003) ..... 19

Design Tex Grp., Inc., v. U.S. Vinyl Mfg. Corp.,
No. 04 Civ. 5002 (JSR), 2005 WL 357125 (S.D.N.Y. Feb. 14, 2005) ..... 18

Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,
697 F.2d 27 (2d Cir.1982) ..... 26

Fantis Foods, Inc. v. Standard Imp. Co.,
425 N.Y.S. 2d 783 (1980) ..... 19

Grecco Photography, Inc. v. Everett Collection, Inc.,
589 F. Supp. 2d 375 (S.D.N.Y. 2008) ..... 29

Gulf Oil Corp. v. Gilbert,
330 U.S. 501 (1947) ..... 20

Hsin Ten Enter. USA v. Clark Enters.,
138 F. Supp. 2d 449 (S.D.N.Y. 2000) ..... 15

ISI Brands, Inc. v. KCC Int'l, Inc.,
458 F. Supp. 2d 81 (E.D.N.Y. 2006) ..... *passim*

Iqbal v. Hasty,
490 F.3d 143 (2d Cir. 2007) ..... 28

Iragorri v. United Tech. Corp.,
274 F.3d 65 (2d Cir. 2001) ..... 20

Jazini v. Nissan Motor Corp.,
148 F.3d 185 (2d Cir. 1998) ..... 6

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

Johnson v. Gordon,
409 F.3d 12 (1st Cir. 2005) .... 25

KBL Corp. v. Arnouts,
646 F. Supp. 2d 335 (S.D.N.Y. 2009).... 29

K.C.P.L., Inc. v. Nash,
No. 98 Civ. 3773 (LMN), 1998 WL 823657 (S.D.N.Y. Nov. 24, 1998).... 7

Karabu Corp. v. Gitner,
16 F. Supp. 2d 319 (S.D.N.Y. 1998).... 8

Kelly v. L.L. Cool J.,
145 F.R.D. 32 (S.D.N.Y. 1992) .... 24

Lana Int'l, Ltd. v. Boeing Co.,
No 93 Civ. 7168 (LLS), 1995 WL 144152 (S.D.N.Y. Mar. 30, 1995).... 22

Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,
918 F.2d 1039 (2d Cir. 1990) .... 8

London Films Prod., Ltd. v. Intercontinental Commc'ns, Inc.,
580 F. Supp. 47 (S.D.N.Y. 1984).... 18

Mareno v. Rowe,
910 F.2d 1043 (2d Cir. 1990) .... 9

McGraw-Hill Cos., Inc. v. Ingenium Tech. Corp.,
375 F. Supp. 2d 252 (S.D.N.Y. Feb. 22, 2005) .... 18

Morris v. Bus. Concepts, Inc.,
259 F.3d 65 (2d Cir. 2001).... 27

Murray v. British Broad. Corp.,
81 F.3d 287 (2d Cir. 1996).... 20, 21

Overseas Media, Inc. v. Skvortsov,
407 F. Supp. 2d 563 (S.D.N.Y. 2006).... 8

PDK Labs, Inc. v. Friedlander,
103 F.3d 1105 (2d Cir. 1997) .... 7

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

Pieczenik v. Cambridge Antibody Tech. Grp.,
No. 03 Civ. 6336 (SAS), 2004 WL 527045 (S.D.N.Y. Mar. 16, 2004)............................ 6

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981)............................................................................................... 20

Pitbull Prod., Inc. v. Universal Netmedia, Inc.,
No. 07 Civ. 1784 (RMBGWG), 2008 WL 1700196 (S.D.N.Y. Apr. 4, 2008) ................ 13

Plunket v. Doyle,
No. 99 Civ. 11006 (KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001)................. 17, 28

R. Maganlal & Co. v. M.G. Chem. Co.,
942 F.2d 164 (2d Cir. 1991) ....................................................................................... 20

Realuyo v. Villa Abrille,
No. 01 Civ. 10158 (JGK), 2003 WL 21537754 (S.D.N.Y. July 8, 2003)........................ 13

Reed Elsevier v. Muchnick,
130 S. Ct. 1237 (2010) ............................................................................................. 25

Rescuecom Corp. v. Hyams,
477 F. Supp. 2d 522 (N.D.N.Y. 2006) ................................................................ 11, 12

Ross v. Mitsui Fudosan, Inc.,
2 F. Supp. 2d 522 (S.D.N.Y. 1998)............................................................................. 23

Royalty Network Inc. v. Dishant.com, LLC,
638 F. Supp. 2d 410 (S.D.N.Y. 2009)...........................................................7, 10, 11, 17

Seldon v. Direct Response Techs. Inc.,
No. 03 Civ. 5381 (SAS), 2004 WL 691222 (S.D.N.Y. Mar. 31, 2004).......................... 12

Simmons v. Abruzzo,
49 F.3d 83 (2d Cir.1995) ........................................................................................... 23

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
450 F.3d 100 (2d Cir. 2006) ....................................................................................... 10

In re Take-Two Interactive Sec. Litig.,
No. 06 Civ. 803 (SUK), 2008 WL 1757823 (S.D.N.Y. Apr. 16, 2008) ......................... 28

Tangorre v. Mako's Inc.,
No. 01 Civ. 4430 (BSJ), 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002)............................ 24

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

Warner Bros. Ent., Inc. v. Ideal World Direct,
516 F. Supp. 2d 261 (S.D.N.Y. 2007)....7, 11, 13, 14

Whimsicality, Inc. v. Rubie's Costume Co., Inc.,
891 F.2d 452 (2d Cir. 1989)....25

Wiwa v. Royal Dutch Petroleum Co.,
226 F.3d 88 (2d Cir. 2000)....8

Yash Raj Films (USA) Inc. v. Dishant.com, LLC,
No. 08-CV-2715 (ENV/RML), 2009 WL 4891764 (E.D.N.Y. Dec. 15, 2009)....18, 29

**STATUTES**

17 U.S.C. § 101....29

17 U.S.C. § 103(b)....27

17 U.S.C. § 106(6)....2, 29

17 U.S.C. § 411....1, 25, 27

17 U.S.C. § 411(a)....25

Fed.R.Civ.P. 8(a)....1, 2, 23, 24

Fed. R. Civ. P. 12(b)(6)....1, 2, 3, 28, 29

**MISCELLANEOUS**

2A Moore's Federal Practice ¶ 8.13, at 8-58 (2d ed. 1994)....23

3 Melville B. Nimmer, Nimmer on Copyright § 12.01[c] (1982)....18

## PRELIMINARY STATEMENT

Defendants, Mansef, Inc.[1] and 6721851 Canada Inc. d/b/a Interhub, Inc. (collectively, "Defendants"), by their undersigned counsel, submit this memorandum of law in support of their Motion to Dismiss ("Motion") the complaint (the "Complaint") of plaintiff Ventura Content, AVV ("Plaintiff").  Defendants seek dismissal on the following grounds:  (1) Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 12(b)(2) for lack of personal jurisdiction; (2) the doctrine of forum non conveniens; (3) Fed.R.Civ.P. 8(a) for failure to meet the pleading standards therein; (4) Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, including, having sued in the name of the wrong party; and (5) 17 U.S.C. § 411 for failure to comply with the pre-filing requirements prescribed therein.

## INTRODUCTION

This lawsuit has absolutely no contact with the State of New York.  The Complaint is brought by Plaintiff, an Aruban corporation, (with no pleaded principal place of business) against two Canadian Defendants.  The claims are for purported copyright infringement of adult-oriented videos Plaintiff alleges it owns, which are not uploaded by Defendants, but rather by users of Defendants' free websites.  As part of using Defendants' free-access websites, these users are required to abide by Defendants' user policies which forbid the uploading of any infringing content.  Plaintiff has brought its lawsuit in this Court based upon two jurisdictional devises, neither of which grant this Court personal jurisdiction over Defendants.  Alternatively, a more convenient forum for resolution of this dispute exists in Quebec, the place where Defendants are registered to do business, from where they operate their business, and where the majority of witnesses and documents are located.

---

[1] As of early 2008, Mansef Productions, Inc. changed its name to Mansef, Inc.

Plaintiff's copyright claims are also fatally defective.  Plaintiff has attached to the Complaint a list of 45 copyright registration certificate numbers it alleges are owned by it and which Defendants have allegedly infringed.  However, Plaintiff has failed to make a prima facie showing of ownership with respect to 23 of the copyright registrations it asserts.  The remaining 22 copyright registrations are for compilations in which the videos (the material allegedly infringed) are pre-existing.  Plaintiff has failed to make a prima facie showing of ownership of the pre-existing material in these compilations.  Thus, these registrations for compilations do not meet the requirement of Section 411(a) of the Copyright Act.  Moreover, all of the causes of action in the Complaint require Plaintiff to demonstrate ownership of the allegedly infringed material.  Having failed to make a prima facie showing of such ownership, Plaintiff's Complaint should be dismissed for failure to state a cause of action upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).

Plaintiff also has failed to adequately plead copyright infringement.  Despite alleging that there exists "rampant infringement" and "massive infringement" on Defendants' websites (Complaint, ¶¶ 5, 26 and 37), Plaintiff has not identified even a single instance of such infringement with specificity as to the acts and the time Defendants allegedly infringed Plaintiff's copyright.  Plaintiff's allegations in the Complaint are not sufficient to meet the requirements of adequate pleading prescribed by Fed.R.Civ.P. 8(a).  Consequently, the Complaint should be dismissed on this basis.

Finally, Plaintiff alleges a violation of its right under 17 U.S.C. § 106(6) – the right of public performance – by the alleged digital video transmission of Plaintiff's video content.  However, this right is accorded only to sound recordings, which do not include sounds

accompanying a motion picture. It has no application to video content. Therefore, Count 1 should be dismissed on this additional ground under Fed.R.Civ.P. 12(b)(6).

**RELEVANT FACTS**

**A. The Parties**

Plaintiff is an Aruban Corporation (with no pleaded principal place of business), allegedly in the business of owning and distributing adult-oriented content. Complaint at ¶ 9. Plaintiff allegedly distributes and performs such adult-oriented content itself and also licenses the distribution, display, and performance of adult-oriented content. Complaint at ¶ 10. Plaintiff alleges that its "trademarks include the 'Pink Visual' brand of adult entertainment." Complaint at ¶ 11. However, a search of the publicly available database of the U.S. Patent and Trademark Office ("USPTO") shows only two live listings for marks containing both "Pink" and "Visual", neither of which is owned by Plaintiff. See Declaration of Michael J. Lane dated April 1, 2010 ("Lane Decl.") at Ex. 1 - printouts from USPTO's website for the marks "PinkVisual" and "PinkVisual Pass."

Both Defendants are Canadian corporations, each with a principal place of business in Montreal, Quebec. Declaration of Feras Antoon dated April 1, 2010 ("Antoon Decl.") at ¶¶ 1-2. Defendants are not incorporated in New York (Antoon Decl. at ¶ 4), have no ties to New York (Antoon Decl. at ¶¶ 4-20, 37, 41), are not licensed to do business in New York (Antoon Decl. at ¶ 4), have no offices in New York (Antoon Decl. at ¶ 7), have never appointed or designated any agent or public official to accept service of process in actions brought against them in New York (Antoon Decl. at ¶ 15), do not conduct continuous, permanent, and substantial business in New York (Antoon Decl. at ¶ 18), employ no one in New York (Antoon Decl. at ¶ 8), neither own nor rent property in New York (Antoon Decl. at ¶ 9), have no post office box or telephone listing in New York (Antoon Decl. at ¶ 10), and have no assets in New York (Antoon Decl. at ¶ 14).

**B. Defendants' Business and Hosting of Content**

Defendants own and operate websites at domains such as <pornhub.com>, <keezmovies.com>, <tube8.com>, and <extremetube.com>. Complaint at ¶ 3. These websites are available free of charge to all viewers and users. (Antoon Decl. at ¶¶ 21-23). Registration is required if a user wishes to upload content to the website. (Antoon Decl. at ¶ 29). However, there is no charge for registering or for uploading content. (Antoon Decl. at ¶ 30). As part of the registration process, users agree not to upload content that would infringe any entity's intellectual property or other rights. (Antoon Decl. at ¶ 29). Once posted, the content is available to viewers throughout the globe. (Antoon Decl. at ¶ 35). Defendants have no control over the source of the content that users upload to the tube websites. (Antoon Decl. at ¶ 44). At no time have Defendants themselves knowingly copied and/or posted Plaintiff's content. (Antoon Decl. at ¶ 48). Defendants gains revenue from selling advertising banners and tabs to entities that wish to advertise their goods and services on these free websites. (Antoon Decl. at ¶ 39). The tube sites only display such third-party advertisements and tabs. (Antoon Decl. at ¶ 40).

After content is uploaded from a user's computer, it is stored on servers that are owned by Swiftwill, Inc. ("Swiftwill"), the company with which Defendants have contracted to host content. (Antoon Decl. at ¶ 31). Defendants play no part whatsoever in the decision to place a server at a particular location or store particular content in a particular server. (Antoon Decl. at ¶ 34). Defendants carry out maintenance of their websites from Quebec, where Defendants' offices and technical staff are located. (Antoon Decl. at ¶ 37). At no time do Defendants or their officers or employees travel to New York for maintenance activities. (Antoon Decl. at ¶ 37).

In order to request a particular video file, a viewer (who may be located at any place in the world with Internet access) simply clicks on a thumbnail of that file as it appears on his/her

computer screen. (Antoon Decl. at ¶ 36). The requested file is then communicated from the appropriate server to the viewer's computer. (Antoon Decl. at ¶ 36). Defendants play no part whatsoever in this transaction. (Antoon Decl. at ¶ 36).

**C. Defendants' "Take Down" Procedures**

Defendants have no control over the source of the content that users post on websites Defendants owns. (Antoon Decl. at ¶ 44). In compliance with copyright laws, Defendants have delineated notice procedures that copyright owners can utilize to inform Defendants of copyright violations. (Antoon Decl. at ¶ 45). Usually within 24 hours of receiving notice, Defendants take down all videos in and to which an entity claims copyright ownership and unauthorized copying by a user of Defendants' website. (Antoon Decl. at ¶ 46).

Plaintiff has provided "take down" notices to Defendants on five separate occasions and to Swiftwill on three separate occasions. On all these occasions the video content in and to which Plaintiff claimed copyright was taken down within 24 hours of receiving those notices. (Antoon Decl. at ¶ 47).

**D. Plaintiff's Alleged Ownership Of Copyrights**

Instead of providing copies of the full copyright registration certificates, Plaintiff has only attached to the Complaint[2] a list of 45 copyright registration numbers, which Plaintiff alleges Defendants have infringed directly and contributorily. See Exhibit A to the Complaint entitled "List of infringing works." A search of the publicly available database of the U.S. Copyright Office's ("Office") reveals that the copyright registration numbers at Serial Nos. 1 through 23[3] are issued to Pink Visual Productions ("Pink"). See Lane Decl. at Ex. 2 – a printout

---

[2] See Ex. 5 to Lane Decl. - a true copy of the Complaint.

[3] Serial Nos. refers to the numbering in Exhibit A to the Complaint.

of the details provided by the Office for copyright registration numbers at Serial Nos. 1 through 23. The Complaint does not contain allegations of a chain of ownership linking Pink with the Plaintiff, or any other manner in which Plaintiff claims copyright in and to these works.

The copyright registration numbers at Serial Nos. 24 through 45, issued to Plaintiff, are all for compilations of works. See Lane Decl. at Ex. 3 – a printout of the details provided by the Office for copyright registration numbers at Serial Nos. 24 through 45. The basis of a claim to copyright for these works is usually in the following terms: "New Matter: compilation, some new text, videodisc cover print & artwork," or "New Matter: some new text, cover print, artwork and compilation of preexisting films." Id. (printouts from the Office's publicly available database for PA0001383966 and PA0001383757, respectively, two of the works in and to which Plaintiff claims copyright.) The video content is preexisting. Id. The Complaint contains allegations of infringement of video content -- the preexisting matter -- not that Defendants somehow infringed the compilation. See e.g. Complaint at ¶¶ 3, 4, 5, and 30. Moreover, the Complaint does not contain an allegation that the copyrights about which Plaintiff sues were actually registered in accordance with the statute. Accordingly, Plaintiff's copyright claims are fatally defective.

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED

### I.    THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff has failed to make a prima facie showing that this Court has personal jurisdiction over the Defendants. See Pieczenik v. Cambridge Antibody Tech. Grp., 2004 WL 527045, at *2 n.27 (S.D.N.Y. Mar. 16, 2004) (citing Jazini v. Nissan Motor Corp., 148 F.3d 185, 181 (2d Cir. 1998) (a plaintiff needs to make a prima facie showing of jurisdiction when challenged by a jurisdiction testing motion prior to discovery). Further, "[i]n a federal question case, a federal

court applies the personal jurisdiction rules of the forum state unless the federal statute specifically provides for national service of process." Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 2009); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997). Since the Copyright Act does not provide for nationwide or international service of process, New York law will determine personal jurisdiction over these non-domiciliary Defendants. Royalty Network, 638 F. Supp. 2d at 417.

The Second Circuit requires a two-part inquiry: "(i) whether the plaintiff has shown that the defendant is subject to personal jurisdiction under the forum state's laws; and (ii) whether the Court's assertion of jurisdiction pursuant to the forum state's laws comports with the requirements of due process." Pieczenik, 2004 WL 527045 at *3 (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)); Warner Bros. Ent., Inc. v. Ideal World Direct, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007).[4]

Plaintiff alleges that this Court may extend jurisdiction over these foreign Defendants under two statutes: CPLR § 301 (general jurisdiction) and CPLR § 302 (specific jurisdiction) statute. See Complaint at ¶ 24. As demonstrated below, Defendants are not subject to personal jurisdiction under either provision.

---

[4] However, courts within this Circuit have held that no consideration need be given to a due process analysis when "the relevant statutes of New York provide no grounds for jurisdiction over the Defendant." ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 90 (E.D.N.Y. 2000); accord K.C.P.L., Inc. v. Nash, No. 98 Civ 3773 (LMN), 1998 WL 823657, at *5 (S.D.N.Y. Nov. 24, 1998) (stating that "[a]bsent allegations that [Defendants] had actively sought to encourage New Yorkers to access [the Website] … [D]efendant[s] had insufficient contacts with the forum to satisfy due process,"). Therefore, even though Defendants would prevail in such a due process analysis, this Court need not reach the due process analysis because it is clear that Defendants are not subject to this Court's jurisdiction.

**A. Defendants Are Not "Present" in New York To Allow This Court to Exercise Its Jurisdiction Over Defendants Under CPLR § 301**

In seeking to invoke this Court's jurisdiction over Defendants under CPLR § 301, Plaintiff alleges only the following: "Upon information and belief, Defendants do continuous and systematic business in New York and hence are present in New York. CPLR § 301." See Complaint at ¶ 24. This bare allegation, lacking any specific factual support and not pleaded upon personal knowledge, is insufficient to establish general jurisdiction over Defendants.

Under CPLR § 301, a nonresident defendant is subject to personal jurisdiction in New York only "if it has engaged in such a continuous and systematic course of doing business in the state that a finding of its 'presence' in this jurisdiction is warranted." Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (recognizing that an entity will be sufficiently "present" when it conducts business in the state that is "continuous, permanent, and substantial."); Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998).

New York courts have found the following "traditional set of indicia" determinative in evaluating the requisite permanent or systematic contacts: "(1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the existence of bank accounts or other property in New York; and (4) presence of employees of the foreign defendant in New York." Pieczenik, 2004 WL 527045, at *3. This requirement is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006) (citations omitted) aff'd, 277 F. App'x 92 (2d Cir. 2008).

Plaintiff does not come close to meeting this rigorous standard. While on a motion to dismiss the court must view all allegations in the light most favorable to the plaintiff and resolve all doubts in a plaintiff's favor, A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993), Plaintiff has offered no factual allegation for the Court to consider. Plaintiff has not alleged any of the contacts which courts consider the hallmarks of "doing business" in New York. The Complaint does not identify any property Defendants own in New York. There are no allegations of an employee, advertisement or solicitation, bank account, business license or registration, or commercial transaction that might tie Defendants to New York, let alone constitute the sort of "continuous, permanent, and substantial" business conduct that is necessary for general jurisdiction under CPLR § 301. See Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) (holding that defendants who do not have offices, hold bank accounts or property, or employ individuals in New York are not doing business so as to constitute presence in New York); Pieczenik, 2004 WL 527045 at *5 (refusing to assert personal jurisdiction under CPLR § 301 absent allegations defendant maintained New York office, had property or telephone listing in state, or had individuals located in state to promote its interests).

Defendants are not "doing business" so as to establish a presence in New York. See Antoon Decl. ¶¶ 6-15, 17-19. Defendants are corporations organized under the laws of Quebec, with their principal place of business in Montreal. (Antoon Decl. at ¶¶ 1-2). Defendants are not incorporated in New York, are not licensed to do business in New York, do not own property in New York, and do not maintain offices, or telephone numbers, or employ any individuals in New York, and do not have assets in New York. (Antoon Decl. at ¶¶ 4, 7-10, 14).

Plaintiff, therefore, has failed to establish a prima facie basis that Defendants are doing business in New York so as to be "present" here.  Defendants are not subject to jurisdiction under CPLR § 301.

**B.     Defendants Do Not "Transact Business" in New York To Subject Them To Jurisdiction Under CPLR § 302(a)(1)**

Plaintiff next attempts to justify this Court's exercise of jurisdiction over the Defendants under New York's long-arm statute, CPLR § 302(a)(1).  Plaintiffs allege:

> [D]efendants transact business in New York and contract to supply goods and services in the state in connection with the matters giving rise to this suit.

Complaint at ¶ 24.

CPLR § 302(a)(1) confers jurisdiction when (1) an entity "transacts any business within the state or contracts anywhere to supply goods or services in the state" and (2) the cause of action at issue arises from such act.  CPLR § 302(a)(1); see Royalty Network, 638 F. Supp. 2d at 417 (stating plaintiff must make a prima facie showing "first, that defendant transacted business within the state of New York and second, that this action arises from that transaction of business" (citing Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006)).

**(i)     Defendants Do Not "Transact Business" in New York**

A foreign defendant "transacts business" in New York when it "purposefully avails itself of the privilege of conducting activities within New York." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); accord Royalty Network, 638 F. Supp. 2d at 417.  Plaintiff has failed to allege any specific, purposeful availment of New York by Defendants.

The Second Circuit recognizes that, because a website is equally accessible anywhere, a party does not subject itself to jurisdiction because it maintains a website which residents of the forum state may access.  Bensusan Rest. Corp., 126 F.3d 25; Royalty Network, 638 F. Supp. 2d

at 418 (recognizing that mere availability of site exclusively to New York users, does not amount to transacting business for purposes of CPLR § 302(a)).  Therefore, courts have developed a "sliding scale" or "spectrum of interactivity" analysis where jurisdiction is premised on the use of a website by residents of a forum state:

> At one end [of the spectrum] are 'passive' websites--i.e., those that merely make information available to viewers.  Such websites have 'been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant.'; Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  At the other end of the spectrum are 'interactive' websites--i.e., those that knowingly transmit goods or services to users in other states.  Where an 'interactive' website is not only available but also purposefully directs activity into the forum state--for example, by making sales of goods or services to New York residents--those activities can be sufficient to trigger jurisdiction under section 302(a)(1).

Royalty Network, 638 F. Supp. 2d at 418-419 (S.D.N.Y. 2009); see Best Van Lines, Inc. v. Walker, 490 F.3d 239, 251 (2d Cir. 2007).  Occupying the middle ground are cases like this one "in which the defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." Royalty Network, 638 F. Supp. 2d at 418-419 (quoting Citigroup, 97 F. Supp. 2d at 565).  Courts considering these "middle ground" websites "distinguish between those with significant commercial elements, which typically are found to constitute transaction of business, and those lacking significant commercial elements, which typically are not." Rescuecom Corp. v. Hyams, 477 F. Supp. 2d 522, 529 (N.D.N.Y. 2006).

However, this "spectrum of interactivity" "does not amount to a separate framework for analyzing internet jurisdiction." Best Van Lines, 490 F.3d at 252; Warner Bros., 516 F. Supp. 2d at 266.  Therefore, "[c]ourts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users." ISI Brands, 458 F. Supp. 2d

at 87 (citing Seldon v. Direct Response Techs. Inc., No. 03 Civ. 5381 (SAS), 2004 WL 691222, at *4 (S.D.N.Y. Mar. 31, 2004)); see also Rescuecom Corp., 477 F. Supp. 2d at 531 (granting a motion to dismiss for lack of personal jurisdiction, finding that defendant did not purposefully avail itself of privilege of conducting activities in New York where there was no showing or allegation that nationally available website specifically targeted New York residents.) Thus, it is recognized that:

> Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York. 'It stretches the meaning of "transacting business" to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred.'

ISI Brands, 458 F. Supp. 2d at 87-88 (citing Savage Universal Corp. v. Graziers Constr., Inc., No. 04 Civ. 1089 (GEL), 2004 WL 1824102, *9 (S.D.N.Y. Aug. 13, 2004)).

This court has declined to exercise personal jurisdiction because of the level and nature of activity conducted on interactive, "middle ground" websites. In Royalty Network, for example, a case strikingly similar to the present case, the defendants operated an interactive website that (a) was available to New Yorkers who could register and obtain a username; play an extensive collection of Indian music (and access movies and photographs); create and save playlists; and stream and download Bollywood movie ringtones; and (b) sold advertising to New York-based companies. First, the court in Royalty Network found that there was no evidence the defendants purposefully and knowingly entered into transactions with New York residents or otherwise targeted New York for business. Id. at 420. The court found that the sale of advertisements to New York-based companies was insufficient to create jurisdiction, because nothing indicated that the defendants sold to, or interacted with, any New York office of any advertisers or had

knowledge that those advertisers were headquartered in New York.  Id.  Furthermore, the

website included advertisements for companies based all over the country.  Id.  Therefore, the

interactions were indistinguishable from interactions with residents located in other jurisdictions

and lacked the traditional indicia of purposeful availment.  Id.

Similarly, in Realuyo v. Villa Abrille, No. 01 Civ. 10158 (JGK), 2003 WL 21537754

(S.D.N.Y. July 8, 2003) aff'd, 93 F. App'x 297 (2d Cir. 2004), while deciding a motion to

dismiss, this court held that neither the "sheer availability" nor the ability to "download at no

cost" allegedly defamatory content on defendant's website was sufficient to satisfy CPLR §

302(a)(1) or due process, even though plaintiffs had shown that the website had over 300

registered users in New York.  Realuyo, 2003 WL 21537754, at *18-20.  The Realuyo court

further held that the presence of paid advertising links to other websites that sell merchandise

does not establish the requisite commercial activity to justify long-arm jurisdiction where the

claim arises out of website content other than those links themselves.  Id. at *21; see also Pitbull

Prod., Inc. v. Universal Netmedia, Inc., No. 07 Civ. 1784 (RMBGWG), 2008 WL 1700196, at

*1, 6 (S.D.N.Y. Apr. 4, 2008) (granting motion to dismiss complaint against an operator of

"middle ground" website on which users posted images with links to download of entire DVDs

owned and produced by plaintiff where site offered no goods for sale, registration was free,

defendants did not advertise sites and interactivity was limited; therefore, defendant did not

target New York).

Even in Warner Bros., the defendant's websites collected membership fees from

customers and provided links to third-party download providers, illegal downloading

instructions, and technical support.  Warner Bros., 516 F. Supp. 2d at 264.  The court concluded

that the plaintiffs failed to allege any specific connection to New York customers, and their

generalized allegation that the defendants had "continuing and ongoing business contacts" with New York residents could not subject the defendants to jurisdiction under § 302(a)(1). Id.; see also Complaint at ¶¶ 4, 24, 36.

Plaintiff's allegation that there is "intensive interaction between the users' computers and defendants' websites" (Complaint at ¶ 24) is not sufficient to confer jurisdiction over the Defendants. "While some courts have held that a highly interactive website may give rise to personal jurisdiction where otherwise there would have been none ... in all such cases, unlike here, the plaintiff first established some further contact with the forum state." ISI Brands, 458 F. Supp. 2d at 88 (quoting Rosenberg v. PK Graphics, No. 03 Civ. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004)). Plaintiff does not allege that the Defendants' websites specifically target New York residents, which it cannot, since the websites do not do so. (Antoon Decl. at ¶ 19). Although Defendants receive revenue from displaying advertisements and tabs on the website (Antoon Decl. at ¶ 39), the website is not "commercial" in the sense in which courts have used that term in analyzing personal jurisdiction. The website has not been used for commercial transactions. (Antoon Decl. at ¶ 38). Nor have Defendants charged users any fees for using the portions of their websites on which allegedly infringing items are uploaded. (Antoon Decl. at ¶ 22). Although Defendants receive revenues from third-party advertising displayed on the website, (Antoon Decl. at ¶ 39), the claims at issue here arise from the allegedly copyright-infringing videos and not from third-party advertising. See Realuyo, 2003 WL 21537754, at *7 ("While those advertising links may cause the website to fall in the middle ground of possible jurisdiction, the claim in this case…does not arise from that set of interactive links. It arises solely from the aspect of the website from which anyone – in New York or throughout the world – could view and download the allegedly defamatory article.").

Further, the advertising is not sufficiently related to the causes of action alleged in the Complaint to justify jurisdiction under § 302(a)(1).  Defendants did not seek out advertisers on the basis of their residing in New York (Antoon Decl. at ¶ 19).  Defendants have not entered into contracts with any New York companies relating to the tube sites.  (Antoon Decl. at ¶ 17).

Defendants' websites are distinct from those in cases where courts have found a website to be sufficiently commercial in nature to satisfy CPLR § 302(a)(1).  See, e.g., Citigroup, 97 F. Supp. 2d at 565 (New York customers could apply for loans on-line, converse on-line with representatives and e-mail questions); Hsin Ten Enter. USA v. Clark Enters., 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (users could order, purchase, and pay for infringing products through site).  In each of these cases, however, "the Court's inquiry regarding the existence of personal jurisdiction went beyond the website at issue."  ISI Brands, 458 F. Supp. 2d at 86.  An inquiry here reveals that Defendants' websites are not sufficiently commercial in nature to satisfy CPLR § 302(a)(1).

Plaintiff also claims that Defendants "transact business" in New York because Defendants utilize host servers in New York.  See Complaint at ¶ 24.  However, the mere presence of the "host server" in New York alone, as a matter of law, does not satisfy the "minimum contacts" requirement for personal jurisdiction over Defendants under CPLR § 302(a)(1).  See, e.g., Amberson Holdings LLC  v. Westside Story Newspaper, 110 F. Supp. 2d 332 (D.N.J. 2000)(finding assignment of web domain pursuant to contract to a "host server" owned and operated by a New Jersey corporation insufficient to confer jurisdiction); see also Chang v. Virgin Mobile USA, LLC, No. 3:07-CV-1767-D, 2009 WL 111570 (N.D. Tex. Jan. 16, 2009) (recognizing that the fortuitous location of servers cannot establish personal jurisdiction).  Defendants do not own, maintain, or repair the server and did not decide to place the server in

New York. (Antoon Decl. at ¶ 31, 34, 37). Without some evidence or allegation that commercial activity in New York actually occurred or was actively sought, Ventura cannot establish jurisdiction over Defendants in New York under CPLR § 302.

**(ii) This Action Does Not Arise Out Of Defendants' In-State Conduct**

Section 302 also requires "'a strong nexus between the plaintiff's cause of action and the defendant's in state conduct.'" Citigroup, 97 F. Supp. 2d at 564 (quoting Welsh v. Servicemaster Corp., 930 F. Supp. 908, 910 (S.D.N.Y. 1996)). Put another way, there must be some "'articulable nexus between the business transacted and the [claim].'" Id. (citation omitted).

Plaintiff alleges that Defendants Tube Sites "function as repositories for an extensive collection of infringing adult videos, including works belonging to Ventura," Complaint at ¶ 3, and that "defendants have engaged in paid transactions with New York residents for the provision or sale of goods and services, including infringing materials." Complaint at ¶ 24. While Defendants offer premium memberships on their websites (Complaint at ¶ 4, 36), such offering does not confer personal jurisdiction on the Defendants because Plaintiff's claims are not "related to" those sales (Id. at ¶ 4). Premium membership provides access only to third-party content. (Antoon Decl. at ¶ 28). These have no connection with Plaintiff's claims. (Complaint at ¶ 3, 4). Defendants do not own premium sites. (Antoon Decl. at ¶ 25). Users cannot upload content to the premium sites. (Antoon Decl. at ¶ 43). Therefore, none of the premium areas offers content uploaded by users which Plaintiff alleges includes the downloading of copyrighted works. Thus, any business that Defendants transact in New York is unrelated to Plaintiff's claims. See, e.g., ISI Brands, 458 F. Supp. 2d at 88 (recognizing that plaintiff's purchase through website not sufficient to confer jurisdiction where infringement claims not related to purchases); Best Van Lines, 490 F.3d at 254 (declining to find that portion of website through which defendant accepted donations, the most interactive feature on the site which might

otherwise constitute doing business in New York, sufficient to find jurisdiction because plaintiff's claim did not arise from acceptance of website donations).

In short, Defendants are not subject to personal jurisdiction under CPLR § 302(a)(1).

### C. Defendants Are Not Subject to Jurisdiction Under CPLR § 302(a)(3)(ii) Because They Did Not Injure Plaintiff's Property In New York and Any Injury To Plaintiff in New York Was Not "Reasonably Foreseeable."

Plaintiff also alleges that jurisdiction exists under CPLR § 302(a)(3) because "Defendants expect or reasonably should expect that their infringing and other illegal conduct to have consequences in New York, and they derive substantial revenue from interstate commerce." Complaint at ¶ 24. Plaintiff's unsupported and incorrect allegation falls woefully short of satisfying its burden to show that Defendants caused them a foreseeable injury in New York.

New York's long-arm provision extends specific jurisdiction over anyone who "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii); Royalty Network, 638 F. Supp. 2d at 423 (noting that under CPLR § 302(a)(3), plaintiff must establish: (1) tortious activity out of state; (2) causing injury in New York; (3) that is reasonably foreseeable to a defendant; (4) who derives substantial revenue from interstate commerce). Plaintiff's jurisdictional claim fails at least under prongs (2) and (3) of this analysis.

Defendants have not caused an injury to Plaintiff's intellectual property held in New York. The determination of whether a tortious act has caused injury within the state is a technical one. Economic loss, on its own, does not constitute "injury to person or property within the state." Plunket v. Doyle, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *9 (S.D.N.Y. Feb. 22, 2001) ("[T]he mere fact that the plaintiff resides in New York and therefore

ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under CPLR § 302(a)(3).”). Here, Plaintiff has no apparent connection to New York.

Courts within this Circuit recognize that “the tort[] of copyright infringement … cause[s] injury in the state where the allegedly infringed intellectual property is held.” McGraw-Hill Cos., Inc. v. Ingenium Tech. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. Feb. 22, 2005) (citing Design Tex Grp., Inc., v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 5002 (JSR), 2005 WL 357125, at *1 (S.D.N.Y. Feb. 14, 2005)) (finding that infringement caused injury in New York because plaintiff, a New York corporation, held its intellectual property in New York) ; see also London Films Prod., Ltd. v. Intercontinental Commc’ns, Inc., 580 F. Supp. 47, 49 n.4 (S.D.N.Y. 1984) (citing 3 Melville B. Nimmer, Nimmer on Copyright § 12.01[c] (1982)) (noting that copyright has no situs apart from the proprietor’s domicile.) Since Plaintiff is an Aruban corporation (Complaint at ¶ 9) and does not allege in its Complaint that it “holds” its intellectual property in New York (or anywhere else in the United States), Plaintiff cannot establish that Defendants injured Plaintiff’s property in the State.

Plaintiff similarly fails to properly allege the “foreseeability of harm” element required to subject Defendants to jurisdiction under § 302(a)(3)(ii). A plaintiff must allege “tangible manifestations showing that the non-domiciliary defendant either should have known where its product was destined or was attempting to reach a New York market.” Yash Raj Films (USA) Inc. v. Dishant.com, LLC, No. 08-CV-2715 (ENV/RML), 2009 WL 4891764, at *10 (E.D.N.Y. Dec. 15, 2009) (quoting Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 362 (S.D.N.Y. 2009). The likelihood that a defendant’s product will find its way into New York does not constitute “foreseeability” of harm, absent evidence of a purposeful New York

affiliation." Yash Raj Films, 2009 WL 4891764, at *10 (citations omitted).  No evidence exists.
No such allegation is made here.

Plaintiff bases its copyright claims on alleged infringement by Defendants' users posting
infringing content on Defendants' websites.  Complaint at ¶¶ 31, 37, 38, 63, 64, 70, 71, 77, and
78.  However, this injury could have occurred anywhere in the world and therefore cannot, as
Plaintiff asserts, be said to be foreseeable specifically in New York so as to justify this Court's
exercise of personal jurisdiction.  See Briley v. Blackford, No. 89 Civ. 8365 (PNL),1990 WL
124341, at *9 (S.D.N.Y. Aug. 21, 1990)("It would unfairly burden nonresidents if the attenuated
consequences of their tortious acts outside a distant forum were to give rise to jurisdiction in that
forum."); Fantis Foods, Inc. v. Standard Imp. Co., 425 N.Y.S. 2d 783, 787 (1980) (stating that it
has "long been held that the residence or domicile of the injured party within a State is not a
sufficient predicate for jurisdiction, which must be based upon a more direct injury within the
State and a closer expectation of consequences within the State than the indirect financial loss
resulting from the fact that the injured person resides or is domiciled there").  Plaintiff would
have suffered the injuries alleged wherever it is located such that Defendants should not
reasonably have expected their actions or that of their users to have consequences specifically in
New York within the meaning of CPLR § 302(a)(3)(ii).

Plaintiff does not allege any specific facts to support personal jurisdiction under CPLR §§
301 and 302(a).  Plaintiff's mere parroting of the language in New York's general and specific
jurisdictional statutes does not suffice to meet its burden of establishing a prima facie case for
jurisdiction over Defendants.  DeJesus v. Rafael, No. 00-5137 (SWK), 2003 WL 21305358, at *3
(S.D.N.Y. June 5, 2003) ("[M]ere parroting of language tailored to meet statutory requirements
is insufficient."(internal quotations omitted)).  This Court should dismiss this case.

## II.    ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF FORUM NON CONVENIENS

Even if the Court were to determine that it has jurisdiction over Defendants, and that the Complaint states a valid cause of action (which it does not, discussed below), the case should be dismissed because the forum is not convenient.

The Second Circuit requires a three-step analysis for resolution of a motion to dismiss based on forum non conveniens: "first, determination of the degree of deference to be afforded to the plaintiff's choice of forum; second, analysis of whether an adequate alternative forum exists; and third, consideration of the private and public factors enumerated by the Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947)." See Iragorri v. United Tech. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001). A review of these factors here overwhelmingly supports dismissal.

Plaintiff, an Aruban corporation with no apparent ties to New York (Complaint at ¶ 9), is not entitled to deference for its choice of New York as the forum. See Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981)) (stating that a foreign plaintiff is afforded less deference with respect to its choice of forum).

Further, Quebec, Canada is an adequate alternative forum. Defendants are Canadian corporations amenable to process in Quebec. See Piper Aircraft, 454 U.S. at 254 n. 22 ("At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." (quoting Gilbert, 330 U.S. at 506-07)); see R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 167 (2d Cir. 1991) ("Ordinarily, a foreign forum will be adequate when the defendant is subject to the jurisdiction of that forum") (citing Piper). In addition, Canada is a signatory to the Berne Convention and therefore Canadian courts can hear

all of the claims in the complaint.  See Murray v. British Broad Corp., 81 F.3d 287.[5]  This

membership alone sufficiently establishes the existence of an adequate alternative forum.  See

also Declaration of Francis Rouleau, Esq., a Canadian attorney, in support of this Motion being

filed herewith.

 Not only does Canada offer an adequate alternative forum for this action, consideration of

the Gilbert private and public interest factors strongly favor dismissal.  With respect to the

private interest factors (See Gilbert, 330 U.S. at 508-09 (identifying the factors as: (1) relative

ease of access to sources of proof; (2) convenience of willing witnesses; (3) availability of

compulsory process for attaining attendance of unwilling witnesses; and (4) other practical

problems that make trial easy, expeditious, and inexpensive)), most witnesses and physical and

documentary evidence are located in Canada; neither Plaintiff nor the Defendants regularly

conduct business in New York; and there is no basis to conclude that the Court could compel the

presence of any of the witnesses.  Thus, New York would be substantially inconvenient for both

parties.  See Realuyo, 2003 WL 21537754, at *13 (finding private interest factors favor dismissal

where defendants had substantial relationship to Philippines, defendants did not transact business

in United States, and plaintiff could not identify witnesses and documents in New York).

 Finally, the public interest factors also tip decidedly toward dismissal because the

copyright laws protect the property rights of owners, not consumers, particularly when, as here,

the copyright owner is foreign.  See Creative Tech. Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696,

704 (9th Cir. 1995) (holding that the protection of copyrights registered in the United States,

---

[5] The Second Circuit in Murray interpreted Article V, Paragraph 2 of the Berne Convention, to
mean that "no matter where [a Plaintiff] brings his claim, United States copyright law would
apply to exploitation of the [copyrighted work] in this country."  Murray, 81 F.2d at 290 and 293.
As such, a suit brought in Canada based on United States copyrights will be determined under
United States copyright law.

owned by foreign entities, was not a public interest because copyrights protect the property rights of owners, not consumers).

Lana Int'l, Ltd. v. Boeing Co., No 93 Civ. 7168 (LLS), 1995 WL 144152 (S.D.N.Y. Mar. 30, 1995) is illustrative.  In Lana, the court dismissed on forum non conveniens grounds the claims of foreign plaintiffs against Boeing for alleged violations of the Lanham Act and common law fraud and contract claims.  The court found that Canada was an adequate alternative forum because defendants were amenable to jurisdiction in Ontario, Id. at *1, even though plaintiffs' Lanham Act claim was not cognizable in Canadian courts, Id. at *2, and despite Canada's different discovery procedures.  Id. at *3.  The court held that the Gilbert factors favored dismissal, primarily because, as is the case here, the bulk of the relevant witnesses and documents appeared to be in Canada, Id. at *4, and because Canada had a localized interest in the dispute.  Id. at *5; see also In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine, 311 F.3d 488, 498-501 (2d Cir. 2002) (dismissing case on the basis of forum non conveniens because (1) petitioner was foreign corporation, giving less deference to its choice of forum; (2) the Ukraine was adequate, alternative forum despite plaintiff's allegations of corruption in Ukrainian courts; (3) private interest factors weighed against enforcing arbitration award against non-signatory to arbitration agreement because finding non-signatory liable "under any one of [the various theories under which a non-signor of an arbitration agreement may be bound to it] requires extensive discovery and, most probably, a trial of the factual issues implicating and establishing such non-signor liability;" and (4) public interest factors, including "the problems implicated in the application of foreign law," weighed in favor of dismissal); Murray, supra (dismissing case involving foreign parties where British citizens subject to process

in the United Kingdom, American law would determine copyright issue, and public and private interest factors favored dismissal).

A trial of this action will be most convenient for both parties in Canada.  The Court should, alternatively, grant dismissal on forum non conveniens grounds.

## III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT ADEQUATELY PLEADED THE ALLEGED COPYRIGHT INFRINGEMENT UNDER FED. R. CIV. P. 8(A)

It is well-settled that "a 'bare bones statement' of [a] legal claim without any supporting facts" does not satisfy the pleading requirements of Fed.R.Civ.P. 8(a).  Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 528 (S.D.N.Y. 1998).  The danger in permitting conclusory allegations to stand is that a defendant would be subject to discovery, during which the plaintiff can search for facts supporting some, possibly new or different causes of action, which were not properly pleaded in the complaint.  The court has noted the danger in this practice:

> [T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists, and a defendant has a right . . . to challenge the legal sufficiency of the complaint's allegations against him, without first subjecting himself to discovery procedures.

Id.

The court has held that "the function of pleadings under the Federal Rules is to give fair notice of the claim asserted.  Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial."  Id.; Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir.1995) (quoting 2A Moore's Federal Practice ¶ 8.13, at 8-58 (2d ed. 1994)).

Under Fed.R.Civ.P. Rule (8)(a), as applied to cases concerning copyright infringement, a complaint must allege: (1) which specific original works are the subject of the copyright claims; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been

registered in accordance with the statute; and (4) 'by what acts during what time' the defendants infringed the copyright.  Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992) aff'd, 23 F.3d 398 (2d Cir. 1994); Tangorre v. Mako's Inc., No. 01 Civ. 4430 (BSJ), 2002 WL 313156, at *2 (S.D.N.Y. Jan. 30, 2002).

Plaintiff has not satisfied at least elements (3) and (4).[6]  It has not alleged in the Complaint that it has registered, in accordance with the statute, the copyrights it alleges Defendants have infringed.  Further, the Complaint is deficient in allegations with respect to the acts and the time during which the alleged copyright infringement occurred.  The Complaint does not contain any particularity whatsoever as to Defendants' alleged infringing acts.  Instead, Plaintiff merely makes bald allegations, such as, "[Defendants' websites] function as repositories for an extensive collection of infringing adult videos, including works belonging to Ventura;" "Defendants are well aware that the video content available on [Defendants' websites] includes infringing copyrighted material;" and "[w]ithout authorization, defendants are publicly performing and have publicly performed or have authorized the public performance of, … Ventura's copyrighted content …".  Complaint at ¶¶ 3, 4, and 42, respectively.  Attaching a list of copyright registration numbers and alleging that those were somehow infringed is simply not sufficient to meet the particularity requirements of Rule 8(a).  Kelly v. L.L. Cool J., 145 F.R.D. at 36 n.3 ("Broad, sweeping allegations of infringement do not comply with Rule 8.")  Accordingly, the Complaint should be dismissed for failure to comply with the requirements of Fed.R.Civ.P. 8(a).

---

[6] Although Ventura alleges that it owns the copyright in and to the allegedly infringed works (Complaint, ¶ 9), a review of the Office's database does not bear this out.  This aspect has been addressed in greater detail in Section IV infra.

## IV. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO COMPLY WITH 17 U.S.C. § 411

17 U.S.C. § 411(a) provides, in relevant part:

> Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

In Reed Elsevier v. Muchnick, 130 S. Ct. 1237 (2010), the Court held that Section 411(a) imposes a pre-condition to filing a claim for copyright infringement. The Second Circuit has held that "proper registration is a prerequisite to an action for infringement." Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 453 (2d Cir. 1989); Accord, Johnson v. Gordon, 409 F.3d 12, 20 (1st Cir. 2005) ("[R]egistration is a precondition for bringing a copyright infringement suit.").

Plaintiff attached to the Complaint a bare listing of 45 copyright registration numbers. See Exhibit A to Complaint. Copies of the actual copyright registration certificates were not attached. Although on its website, the Office does not provide complete applications or scans of the certificates that eventually were issued, the information the Office provided establishes that Serial Nos. 1 through 23[7] were issued to Pink, and Serial Nos. 24 through 45 to the Plaintiff. See Lane Decl. at Exh. 2 - printouts of the details for the 45 copyright registration certificate numbers provided by the Office.

### A. Copyright registrations at Serial Nos. 1 through 23

Pink, the owner of more than half of the impugned copyright registrations, is not a party to the lawsuit. The Complaint has been filed by Ventura Content, AVV, an Aruban corporation.

---

[7] The Serial Nos. refer to the numbering provided in Exhibit A to the Complaint.

There is no chain of title alleged in the Complaint linking Plaintiff to the copyrights at Serial Nos. 1 through 23.[8] "It is well settled that in an action for infringement of copyright, the copyright owner is an indispensable party." Alexander v. Irving Trust Co., 132 F. Supp. 364 (S.D.N.Y. 1955) aff'd, 228 F.2d 221 (2d Cir. 1955) (dismissing action for plaintiff's failure to join copyright owner and its failure to do more than simply plead a legal conclusion asserting equitable ownership of copyright).

17 U.S.C. § 501(b) provides, in relevant part:

> The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it.

Thus, Pink, being the owner of the copyrights at Serial Nos. 1 through 23, not the Plaintiff, is the entity that is entitled to sue for purported copyright infringement. Plaintiff, not having made a plausible showing of ownership of the copyrights at Serial Nos. 1 through 23 is not entitled to sue based on these registrations. Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27, 32 (2d Cir.1982) ("The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights"), superceded by statute and rule on other grounds; Big East Entm't, Inc. v. Zomba Enter., Inc, 453 F. Supp. 2d 788, 796-97 (S.D.N.Y. 2006) (finding that plaintiff lacked standing to sue based on Eden Toys, Inc. because it did not own the copyrights nor was there a written assignment thereof). Thus, insofar as copyrights at

[8] During the pre-motion exchange of letters, Plaintiff referred to a purported copyright transfer that is recorded with the Office at document no. V3564 D360. However, this transfer appears to be from a Don V. Ho ("Ho") to Plaintiff. See Lane Decl. at Ex. 4 - printout of the details of the document recorded at V3564 D360 provided by the Office. There is no link alleged in the Complaint between Ho and Pink. The first page of the document recorded at V3564 D360 was later produced by Plaintiff's counsel. This document does not transfer copyright ownership from Pink to Plaintiff.

Serial Nos. 1 through 23 are concerned, the lawsuit has been filed on behalf of the wrong party and should, therefore, be dismissed.

**B. Copyright registrations at Serial Nos. 24 through 45**

The copyright registrations at Serial Nos. 24 through 45, although issued to Plaintiff, are evidently for compilations. These compilations consist of, generally, "[n]ew matter: some new text, cover print, artwork & compilation of preexisting films." See, e.g., a printout of details of the copyright registration no. PA0001383757 at Ex. 2 to Lane Decl. According to 17 U.S.C. § 103(b):

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

This section provides that grant of copyright registration to Plaintiff for a compilation consisting of new matter and preexisting matter will not give it any rights to the preexisting matter.[9] Plaintiff has alleged that Defendants have copied videos – the preexisting matter – to which it cannot claim any copyright based on its registration of the compilation. See e.g. ¶¶ 3, 4, 5, and 30 of the Complaint. The copyright registrations at Serial Nos. 24 through 45, therefore, do not satisfy the requirements of 17 U.S.C. § 411. Accordingly, this Complaint should be dismissed for failure to comply with the threshold pre-condition of registering the asserted copyrights prior to filing suit under 17 U.S.C. § 411.

---

[9] Decisions holding that registration of a compilation of songs and stories would suffice to bring an infringement action of the individual songs or stories is applicable only to those cases where the owner of the compilation also owns the constituent elements of the compilation. See e.g. Morris v. Bus. Concepts, Inc., 259 F.3d 65. 68 (2d Cir. 2001). Plaintiff has not made any allegation and Mansef has found no proof that Plaintiff owns copyright in and to the constituent elements of the compilation. Thus, this line of cases has no application here.

## V. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER FED. R. CIV. P. 12(B)(6)

To avoid dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level." ATSI Commc'ns. Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The "touchstone" of adequate pleading under Rule 12(b)(6) is "plausibility" — the Complaint and other materials before the Court must state "more than mere speculation or suspicion that a plaintiff is entitled to the requested relief' and instead must "nudge [a plaintiff's] claims across the line from conceivable to plausible." In re Take-Two Interactive Sec. Litig., No. 06 Civ. 803 (SUK), 2008 WL 1757823, at *6 (S.D.N.Y. Apr. 16, 2008) (citing Twombly, 550 U.S. at 555, 570-71); see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

"To establish a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." Byrne v. British Broad. Corp., 132 F. Supp. 2d 229, 232 (S.D.N.Y. 2001). All of the counts asserted in the Complaint are for copyright infringement, and therefore require Plaintiff to show ownership of valid and enforceable copyrights. As detailed in Section 5 supra., Plaintiff has not provided a plausible showing of ownership of enforceable copyrights in and to the video content it alleges Defendants have infringed. Such a showing is essential in order to survive a motion to dismiss. Big East Entm't Inc., 453 F. Supp. 2d at 796-97; Plunket v. Doyle, 2001 WL 175252.

Moreover, as to Count IV, the Complaint contains an "Inducement of Copyright Infringement" cause of action. See Complaint, Count IV. The Second Circuit does not recognize a cause of action for inducement to infringe, separate and distinct from a contributory

infringement cause of action.  See KBL Corp. v. Arnouts, 646 F. Supp. 2d 335, 346 (S.D.N.Y. 2009), relying on, Cartoon Network LP v. CSC Holdings, Inc., 536 F.3d 121, 133 (2d Cir. 2008), cert. denied, 1295 S. Ct 2890 (2009).  Therefore, there is a separate ground to dismiss Count IV of the Complaint under Fed.R.Civ.P. 12(b)(6).

Finally, Count I of the Complaint contains a "Direct Copyright Infringement – Public Performance" cause of action.  See Complaint, Count I.  Plaintiff alleges that,

> Without authorization, defendants are publicly performing and have publicly performed or have authorized the public performance of, by means of digital video transmission, Ventura's copyrighted video content in violation of 17 U.S.C. §§ 106(6) and 501, including but not limited to the copyrighted video content listed in Exhibit A hereto.

(emphasis added.)  However, 17 U.S.C. § 106(6) is concerned with the exclusive rights of a copyright owner to authorize "in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." (emphasis supplied.)  On its face, this section is inapplicable to video content by means of digital video transmission.  See Grecco Photography, Inc. v. Everett Collection, Inc., 589 F. Supp. 2d 375, 382 (S.D.N.Y. 2008) vacated in part on other grounds, No. 07 Civ. 8171 (CM)(JCF), 2009 WL 969928 (S.D.N.Y. Apr. 7, 2009) ("Section 106(6) relates to the right of public performance of sound recordings by means of digital audio transmissions.")  Moreover, 17 U.S.C. § 101 excludes from the definition of "sound recordings" "the sounds accompanying a motion picture or other audiovisual work …."  Therefore, Count I of the Complaint does not present a cause of action upon which this Court can grant relief to Plaintiff under the provisions of 17 U.S.C. § 106(6).  Thus, there is a separate ground to dismiss Count I of the Complaint under Fed.R.Civ.P. 12(b)(6).

**CONCLUSION**

In view of the foregoing, this Court should dismiss the Complaint in its entirety, and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 1, 2010

Respectfully submitted,

ANDERSON KILL & OLICK, P.C.

By: ______________________________

Michael J. Lane
Kanishka Agarwala
Dennis J. Nolan
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

Attorneys for Defendants
Mansef, Inc. d/b/a Mansef Productions, Inc. and
6721851 Canada Inc. d/b/a Interhub, Inc.